IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KENNETH GREGORY WILLIAMS,

        Plaintiff,

v.

STEVE SHELTON, Oregon Department of
Health Service. Dir., MARRY RINES,
(CCCI) Health Service Manager, DR.
SNIDER (CCCI), DOUG BUTLER
(ODOC) Health Service Pharmacist,

        Defendants.

Civ. No. 3:09-CV-799-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

This motion concerns Plaintiff Kenneth Gregory Williams's ("Williams") claim that he was

discriminated against because of his race by Oregon Department of Corrections ("ODOC") staff. In particular, Williams, who is African American, alleges that he was denied access to medication as a result of this discrimination. Defendants Steve Shelton, Mary E. Raines, Robert W. Snider, and Doug A. Butler ("Defendants") move for summary judgment on this claim because, first, Williams cannot demonstrate a genuine issue of material fact that he was denied medication based on his race and, second, Defendants are shielded from liability under the doctrine of qualified immunity.[1]

Williams originally asserted two claims, one of which was dismissed in this court's prior disposition for failure to exhaust administrative remedies. The remaining claim concerns a discrimination grievance filed by Williams. The grievance alleged that Dr. Robert W. Snider ("Dr. Snider") refused to prescribe Williams a particular medication on the ground that it was not permitted at the facility, but Williams later learned that a Caucasian inmate had received a prescription for the same medication. Williams alleges that he was actually deprived of that medication because of his race, in violation of the Equal Protection clause of the Fourteenth Amendment.

*Factual Background*

Dr. Steven Shelton ("Dr. Shelton") is "currently the Chief Medical Officer for the Oregon Department of Corrections[.]" (Shelton Declaration ("Decl.") ¶ 2.) Regarding the medication of inmates, Dr. Shelton described ODOC policy:

---

[1] Despite the fact that Williams requested several extensions of time in which to file his opposition materials, he did not ultimately do so. Even so, the court may not grant summary judgment by default and must determine whether summary judgment is appropriate on the record before it. See *Gupta v. Terhune*, 262 Fed. Appx. 772, 773 (9th Cir. 2007) (citing the Ninth Circuit's holding in *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) that a "nonmoving party's failure to oppose summary judgment 'does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law.'").

FINDINGS AND RECOMMENDATION        2                              {KPR}

> ODOC policy is to confiscate any and all pills possessed by inmates during the intake process. Those medications are inventoried and may only be administered upon provider signature. . . . Also during the intake process, prescribed medications will be reviewed and continued according to the schedule the inmate was following prior to admission. If a medication is not available, the nurse will consult with a provider to determine the appropriate course of action.

(Shelton Decl. ¶ 8-9.)

ODOC distinguishes between medications that are on the "Formulary List," hereinafter "formulary medications," and those that are not, hereinafter "non-formulary medications." (Shelton Decl. ¶ 10.) Formulary medications are "readily accessible and a provider can prescribe the medication." *Id.* If an inmate is taking a non-formulary medication at intake, he or she "may have their order continued for up to thirty (30) days." (Shelton Decl., Ex. 1 at 4.) ODOC policy states: "Prescribed medications will be reviewed and continued according to the schedule the inmate was following prior to admission. If a medication is not available, the nurse will consult with a provider." (Shelton Decl., Ex. 2 at 2.) Non-formulary medications may be obtained for an inmate if they have been "requested by a practitioner and approved by the Therapeutic Level of Care Committee." (Shelton Decl. ¶ 11.) The "Non Formulary Medication Exception Request" form asks the provider to explain why a formulary medication is not being used. (Shelton Decl., Ex. 3 at 2.) Upon approval of the non-formulary medication by the committee, the pharmacy will initiate a purchase of such medication. (Defendants' Concise Statement of Material Facts ("CSMF") ¶ 7.)

On December 8, 2008, ODOC took custody of Williams at the Coffee Creek Correctional Facility ("Coffee Creek"). (CSMF ¶ 3.) He had previously been in the custody of Multnomah County and arrived at Coffee Creek with a prescription for Flexeril. (CSMF ¶ 13; Shelton Decl., Ex. 5 at 1.) Upon intake, Williams was seen by a nurse, who "noted that [Williams] had entered the

institution with a prescription for Flexeril and, as a matter of course, wrote as a [sic] continuation of medications." (CSMF ¶ 13.) At that time, and pursuant to ODOC procedures, "any and all pills possessed by [Williams] would have been collected from him." (CSMF ¶ 12.) Dr. Snider reviewed Williams's "prescriptions and medical needs" on December 11, 2008. (CSMF ¶ 14.) At this time, Dr. Snider continued Williams's blood pressure medication and prescribed him the anti-inflammatory pain medication Naprosyn. (CSMF ¶ 14; Shelton Decl., Ex. 6 at 2.) Williams's Flexeril prescription was neither continued nor did Dr. Snider seek approval for its continuation.

*Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell*

*v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, deference to the nonmoving party has limits. The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. In other words, all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Accordingly, in order to establish a violation of the Equal Protection Clause, a plaintiff must establish that he was treated differently from other similarly situated individuals with respect to the governmental act, statute, or regulation. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race." *Romero v. Yates*, CASE No. 1:08-cv00669-LJO-MJS (PC), 2011 U.S. Dist. LEXIS 53850, at *14 (E.D. Cal. May 18, 2011) (citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005)). Such discrimination must be also intentional such that "a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis in

original)).

The equal protection clause extends to incarcerated individuals: "Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race." *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1973)). To avoid summary judgment on such a claim, the prisoner "'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated.'" *Id.* (quoting *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 732 (9th Cir. 2003) (citations and alterations omitted)).

Defendants argue that Williams has failed to establish a genuine issue of material fact that he was denied a prescription for Flexeril because of his race, or that Dr. Snider intended to discriminate against him, at least in part because of his race. Rather, Defendants contend, the evidence shows that Flexeril was not available at the ODOC facility without special approval, and that Williams did not receive such approval. According to Dr. Shelton, Flexeril is non-formulary, and, though "an exception can be obtained as described above, it is rarely prescribed within ODOC given its questionable utility and potential for abuse." (Shelton Decl. ¶ 13.) Dr. Shelton states further: "There is no evidence for ongoing use of Flexeril in chronic musculo-skeletal pain conditions." *Id.* For these reasons, Flexeril has been classified as a non-formulary medication. *Id.*

Dr. Snider attested to the fact that he did not deny Williams Flexeril because he was African American, but rather for legitimate medical reasons. He stated that, based upon review of Williams's medical records, he "declined to prescribe [Williams] Flexeril because it was a Non-Formulary medication and because it was not medically appropriate to treat the Plaintiff's low-back pain." (Snider Decl. ¶ 5.) Although he does not recall his specific consultation with Williams, Dr.

Snider states that Flexeril has marginal treatment value for Williams's condition and, additionally, that it carries the potential for abuse. Furthermore, Dr. Snider has never prescribed Flexeril to an ODOC inmate. (Snider Decl. ¶ 6.) Though he does not specifically recall providing medical care to Williams, Dr. Snider represents that he has never made a medical decision based on race. (Snider Decl. ¶ 7.) Finally, Defendants argue, even if Williams's allegation that a white inmate received Flexeril shortly after Williams was denied same, there are legitimate medical reasons for this difference in treatment.[2]

The court agrees that Williams has failed to meet his burden at summary judgment and that the claim should fail as a matter of law. Williams has presented no evidence to support his claim and has instead presented only bare allegations. This cannot advance a claim past summary judgment. Defendants, for their part, have presented evidence that it is ODOC's policy to conditionally continue medication that an inmate possessed upon arrival; that some medications are not readily available at the facility and require special approval; that Williams was evaluated upon intake and later by Dr. Snider; that Dr. Snider did not continue Williams's Flexeril prescription, but prescribed Naprosyn for pain relief; that Dr. Snider considers Flexeril to have marginal utility in ongoing use which is outweighed by its potential for abuse; that Dr. Snider has never prescribed Flexeril to an ODOC inmate; and that he did not and does not make medical decisions on the basis of race. Williams has produced no evidence to counter Defendants' evidentiary showing. Even viewing the evidence in the light most favorable to Williams, no genuine issue of material fact exists.

---

[2] Defendants note that they have not reviewed the Caucasian inmate's medical records, which are confidential, and therefore cannot speak with certainty as to whether he was actually prescribed Flexeril and, if so, for what reason.

The court should grant summary judgment in favor of Defendants on this claim.[3]

*Conclusion*

For the reasons above stated, Defendants Motion for Summary Judgment (#84) should be granted.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 4, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of July, 2011.

JOHN V. ACOSTA
United States Magistrate Judge

---

[3] In light of the fact that Williams cannot establish, as a matter of law, a constitutional violation, the court need not address whether Defendants are entitled to qualified immunity.